[No. 4830.   Decided December 10, 1903.]

GEORGE E. SIMPSON, *Appellant,* v. CITY OF WHATCOM, *Respondent.*[1]

MUNICIPAL CORPORATIONS—ENFORCING VOID ORDINANCE—LIA-
BILITY FOR ACTS OF POLICE OFFICERS—CITY AS STATE INSTRUMENT-
ALITY—DAMAGES FOR UNAUTHORIZED ARREST.   A municipal cor-
poration is not liable for the acts of its police officers in arrest-
ing and prosecuting a person under a void ordinance requiring
bicycles to be licensed, although the city receives the benefit of
the license fee and its law officers conducted the prosecution, since
the damage arises in the performance of a duty imposed upon
the city as a public instrumentality of the state.

SAME—FEES COLLECTED FOR THE BENEFIT OF CITY.   The fact
that the city received the benefit of the license fees does not make
the duty a purely corporate one, as the legislature may distribute

[1]Reported in 74 Pac. 577.

the revenue therefrom as it sees fit, and the city is liable only where the officers are acting for the city's exclusive benefit.

SAME—POLICE POWERS—BICYCLES. Bicycles are vehicles and their use upon the public streets of a city is a proper subject for police regulation in the interests of public safety, to be enforced by the city acting as an instrumentality of the state.

Appeal from a judgment of the superior court for Whatcom county, Joiner, J., entered February 24, 1903, upon sustaining a demurrer to the complaint, dismissing an action for damages for plaintiff's arrest and prosecution under a void city ordinance. Affirmed.

*Stafford & Ellis* (*Marshall P. Stafford,* of counsel), for appellant. The complaint alleges that the officers acted for the city's exclusive benefit, and for all such acts the city is liable. *McGraw v. Marion,* 98 Ky. 673, 34 S. W. 18, 47 L. R. A. 593; *Providence v. Clapp,* 17 How. 161; *Maximilian v. Mayor,* 62 N. Y. 160; *Woodhull v. New York,* 150 N. Y. 450, 44 N. E. 1038; *Stewart v. New Orleans,* 9 La. An. 461; *Carrington v. St. Louis,* 89 Mo. 208, 1 S. W. 240. The city was liable by reason of the adoption and ratification of the acts. 2 Dillon, Munic. Corp., § 971 (4th ed.); *Commercial El. L. & P. Co. v. Tacoma,* 20 Wash. 288, 55 Pac. 219; *Wendel v. Spokane County,* 27 Wash. 121, 67 Pac. 576. The city is not relieved by the fact that the torts befall in its exercise of police power. *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847; *Saylor v. Montesano,* 11 Wash. 328, 39 Pac. 653; *Taake v. Seattle,* 16 Wash. 90, 47 Pac. 220.

*H. M. White,* for respondent.

DUNBAR, J.—Respondent passed a municipal ordinance prohibiting the riding of bicycles of a certain size upon its streets unless a license therefor were procured and a tax of one dollar a year paid for such license. The ordinance pro-

vided that seventy-five per cent of the revenue derived from such license should be expended on certain local improvements within respondent's municipal limits, and that the remaining twenty-five per cent was to be, and it was, mingled with, and made a part of, the general funds of the city for use in its local interests, benefits, and advantages.

On the 15th day of August, 1900, one Shelley, a policeman of respondent city, made and swore to an affidavit before a police justice of the respondent, charging appellant with the violation of said ordinance by riding a bicycle on the public streets without having procured a license therefor. A warrant was issued, the said policeman arrested the plaintiff, imprisoned him for several hours, and caused him to be arraigned before a police justice on said charge. Appellant was prosecuted by the city attorney, and convicted and fined, and a judgment for such fine and costs, amounting to $13.70, was entered against him in the police court of said city. In order to release himself from said conviction and judgment, appellant was compelled to, and did, appeal therefrom to the superior court of the state of Washington, giving bond in the sum of $100 to perfect such appeal. Upon said appeal the ordinance was held by the judge of the superior court to be null and void in so far as it purported to prohibit the riding of bicycles upon the public streets of respondent without a license, and appellant was acquitted of such charge. In defending himself from such charge, conviction, and judgment, appellant was compelled to employ attorneys at an expense of $50.

Afterwards appellant brought an action for damages against the city, alleging in his complaint the matters and things just above stated, in addition to the allegation that, by reason of such charge, arrest, and trial, appellant lost time to the value of $15, and was injured in his feelings

and subjected to humiliation and disgrace and caused mental pain and anxiety to his damage in the sum of $2,500, asking judgment for $2,565. To this complaint, the substance of which we have given, the respondent city demurred. The demurrer was sustained, and, appellant refusing to plead further, judgment was entered in favor of respondent.

The issues arise on the ruling of the court in sustaining the demurrer to the complaint. The exact question involved in this case has not heretofore been presented to this court, and we have therefore made an exhaustive examination of the authorities bearing on the question. It must be confessed that they are somewhat bewildering, as well in number as in lack of harmony, viewed either from the standpoint of different conclusions from the same state of facts, or of the announcement of different principles controlling the same conclusions. So that it is not easy to reconcile all of the decisions and deduce therefrom a satisfactory general principle, by subjection to which the different facts can be tested.

The controlling question in all this character of cases is whether or not the officers, to whom are attributed the delinquencies which resulted in the damage alleged, are the agents of the city. If they are, then the doctrine of *respondeat superior* applies, and the city is liable; if not, otherwise. We think it is a general rule—at least one which has been adopted by this court—that, even in the absence of a statute giving the right of action, cities are liable for acts of misfeasance and malfeasance injurious to individuals, done by their authorized agents or officers in the course of the performance of corporate powers, or in the execution of corporate duties. But this raises the perplexing distinction between corporate duties and public duties—questions as

to when the officers are acting as agents for the corporation, and when of the state or general public. When for the general public, or in furtherance of the public policy of the state, the city is not liable for their acts. In some jurisdictions, as in Massachusetts, it is held that, even when the officers are acting confessedly in the interests of the city, no private actions for damages will lie unless specially authorized by statute. But it is unnecessary to discuss that line of cases, as this court in *Sutton v. Snohomish,* 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, has laid down the contrary rule, which it has since uniformly followed.

We think, however, this general deduction may be made: that whenever the damaging action or the neglect of the officer arises in the execution of a duty which is for the exclusive benefit of the city, the city is liable; but if the duty, in whole or in part, is one imposed upon the city as a public instrumentality of the state, the city is not liable. It is insisted by the learned counsel for the appellant that, inasmuch as the complaint shows that the ordinance provides that the revenues arising from the licenses sought to be secured shall go into the city treasury, the city is liable, under the rule announced in Dillon on Municipal Corporations (4th ed.), § 974; that, if the duties relate to the exercise of corporate powers and are for the peculiar benefit of the corporation in its local or special interest, they (the officers) may be regarded as its agents or servants, and the maxim of *respondeat superior* applies.

But it does not necessarily follow that the duty is purely a corporate one because the revenues arising from the provisions of the law go into the treasury of the municipality. It is in the nature of a police regulation, a regulation which the legislature had a right to make; the legislature had a right, also, to distribute the powers of the government in

the enforcement of its public policy, to constitute the different municipalities enforcing agencies, and to distribute the revenues as it saw fit. It would certainly not be an unreasonable act on the part of the legislature to place the revenues arising from the law in the treasury of the municipality collecting them. And it cannot be disputed that the state, under its police power, has the right, in the absence of constitutional limitations or inhibition, to subject all occupations to a reasonable regulation where such regulation is required for the public welfare. The bicycle is a comparatively modern invention, and legislation in regard to it has been limited. Still it has been established by judicial decision that, so far as its use on the highways is concerned, it is to be regarded as a carriage or vehicle and subject to the same burdens as other vehicles. 4 Enc. of Law (2d ed.), p. 16, and cases cited. The use of vehicles on public highways is a subject of police regulation. 22 Am. & Eng. Enc. Law (2d ed.), 929.

In any event, common observation would determine the fact that the bicycle, with its capacity for extreme speed, its liability on that account to injure pedestrians who might come in contact with it, as well as the riders themselves, is a particularly suggestive subject for public legislation; and the legislature of this state, recognizing such necessity, passed a law found in the laws of 1899 at page 41, authorizing and empowering cities of the first, second, third, and fourth classes to regulate and license by ordinance the riding of bicycles, to construct and regulate the use of bicycle paths and roadways, prohibiting the improper use of such paths and roadways, and providing a penalty and declaring an emergency. This law authorizes the cities to establish and collect reasonable license fees from all persons riding bicycles, and to enforce the payment thereof by reasonable

fines and penalties, and make provision for the distribution of the funds arising from such licenses. So that it will be seen that the ordinance was enacted in conformity with the express policy of the legislature in relation to controlling bicycles.

Nor could Mr. Dillon, in the quotation relied upon by appellant, have had in view the kind of case under discussion here; for, after a discussion of the general principles relating to the liability of towns for the action of its officers, he continues, in § 975, as follows:

"Agreeably to the principles just mentioned, *police officers appointed by a city are not its agents or servants, so as to render* it responsible for their unlawful or negligent acts in the discharge of their duties; and, accordingly, a city is not liable for an assault and battery committed by its police officers, though done in an attempt to enforce an ordinance of the city; or for an arrest made by them which is illegal for want of a warrant, or for other cause; . . . So, on the same principle, a person who suffers personal injury while aiding the police officers of a city, at their request, in arresting disturbers of the public peace under a valid ordinance, has no remedy against the city. The municipal corporation in all these and the like cases represents the state or the public; the police officers are not the servants of the corporation; the principle of *respondeat superior* does not apply, and the corporation is not liable unless by virtue of a statute expressly creating the liability."

While the case of *McGraw v. Marion,* 98 Ky. 673, 34 S. W. 18, 47 L. R. A. 593, seems to lay down a different doctrine, holding that a municipal corporation is answerable for the damage done to any person by its officers in enforcing an unconstitutional ordinance or by-law enacted for the sole benefit of the corporation or its citizens—the ordinance in question being one requiring all transient persons to pay a license tax for the privilege of

selling goods or merchandise of any kind at auction—and
while a few cases have followed the doctrine announced in
that case, yet the same court in *Taylor v. Owensboro,* 98
Ky. 271, 32 S. W. 948, 56 Am. St. 361, held that a muni-
cipal corporation was not liable for the acts of its officers in
enforcing the penal or criminal laws of the commonwealth,
or in enforcing penal ordinances of the city; and that muni-
pal officers, while engaged in duties relating to the public
safety and in the maintenance of public order, are the serv-
ants of the commonwealth. So that the court in the case of
*McGraw v. Marion, supra,* must evidently have concluded
that the imposition of a license tax on transient persons was
not in accordance with any provision of the general law, but
for the sole and special benefit of the city. The difficulty
in discriminating the cases on any reasonable theory, how-
ever, arises from the fact that the court in the case of *Tay-
lor v. Owensboro, supra,* states that while the ordinance
under which the arrest purported to be made was void, the
arrest was held to be authorized by a state statute; but says
that the absence of the statute would have made no differ-
ence, for the reason that municipal corporations are auxil-
iaries of the state government; that the officers charged
with keeping the peace are officers of the commonwealth,
and a breach of the peace is an offense against the common-
wealth, so that a municipal corporation is not liable for the
acts of its officers in making a reasonable arrest for such
breach. But whether or not there was any legitimate dis-
tinction that could have been drawn between the cases, both
of them arising out of the police power of the state, it seems
to us that the great weight of authority supports the first
announcement of the Kentucky court as made in *Taylor v.
Owensboro, supra.*

While there are some courts which follow the rule an-

nounced in *McGraw v. Marion,* no court that we know of
has held the municipality liable in a case exactly like the
one at bar, where the question came up squarely as to
whether or not a policeman, in making an arrest under an
illegal ordinance or warrant, was the agent of the city.
There are many cases directly to the contrary, and sustain-
ing the doctrine announced by § 975 of Dillon, *supra.*

In *Trammell v. Russellville,* 34 Ark. 105, 36 Am. Rep.
1, a case of enforcing illegal ordinances, it was held that,
for acts done by police officers in their public capacity
and in discharge of their duties to the public, cities and
towns incurred no liability to persons who may be injured
by them; that neither for the act of the council in passing
an illegal ordinance, nor for that of the mayor in issuing a
warrant for the arrest of any person for its violation, nor
for that of the marshal in arresting the offender under it,
is a town liable to him. In *Tindley v. Salem,* 137 Mass.
171, 50 Am. Rep. 289, it was held that a city which under-
takes the celebration of a holiday under the authority of the
public statutes, exclusively for the gratutious amusement of
the public, is not liable to an action by one who sustains
personal injuries through the negligence of servants of the
city in discharging fireworks for the purpose of the celebra-
tion. After discussing a certain class of cases where the
city was liable for the action of its servants, the court
says:

"Easily distinguishable from these are the cases where
the city or town is exonerated from liability, on the ground
that the wrongful act complained of is not its act, but the
act of persons who are deemed to be public officers, existing
under independent provisions of the law; officers who,
though appointed and paid by the city or town, and though
perhaps its agents or servants for other purposes, are yet
held not to sustain this relation in respect to the par-

ticular act in question—as, for example, members of a
fire department."

It may be said here that this court held in *Lawson v. Seattle*, 6 Wash. 184, 33 Pac. 347, that the city was not liable
for the negligence of officers of a fire department.   In
*Worley v. Columbia,* 88 Mo. 106, it was held that police
officers of a town, engaged in enforcing its police regulations, are not regarded as officers of the town, in its corporate capacity, and the town is not liable for acts done by
them while so engaged.   This was an action for false imprisonment, and in its facts was parallel in principle with
the case at bar.   The court, in discussing the action of the
officers in enforcing the police regulation, said:

"When so acting their duties are of a public character;
their acts are in the interest of civil government and of the
public, and they are not, when acting in that behalf, the
servants of the town or city, in its corporate capacity.   The
relations of principal and agent do not then exist, and the
town is not liable for their said acts in that behalf."

In *Nisbet v. Atlanta,* 97 Ga. 650, 25 S. E. 173, where
the death of one convicted in a corporation court, and sentenced to work upon the public streets, was occasioned by
the negligence on the part of the foreman who had been
placed by the municipal authorities in charge thereof, the
court said:

"The question involved in this case has been too often
passed upon by this court to require further elaboration.
Neither the law of master and servant nor the doctrine of
*respondeat superior* applies in a case where a prisoner
undergoing punishment for the violation of a municipal
ordinance is injured or killed in consequence of the negligence or misconduct of the officer having the custody or
control of such prisoner.   This is true because, in such
matters, the municipal corporation is exercising governmental powers and discharging governmental duties, in

the course of which it, of necessity, employs the services of the officer in question."

citing *Wilson v. Mayor,* 88 Ga. 455, 14 S. E. 710; and *Love v. Atlanta,* 95 Ga. 129, 22 S. E. 29, 51 Am. St. 64.

In *Bartlett v. Columbus,* 101 Ga. 300, 28 S. E. 599, 44 L. R. A. 795, it was held that a municipal corporation is not liable in an action for false imprisonment for damages alleged to have been occasioned to the plaintiff by reason of his imprisonment under a judgment rendered against him by a municipal court for the violation of an ordinance, and that this was true though such judgment may have been irregular, erroneous, or even void.

"The passage of the ordinance," said the court, "by the city council of Columbus, for the alleged violation of which the plaintiff in error was tried, convicted, and imprisoned, was an exercise of the legislative power, and his trial and sentence by the recorder was an exercise of the judicial power conferred by the state upon the municipal corporation. It is well settled that for errors of judgment committed in the exercise of either of these powers a municipal corporation is not liable in damages."

This applies to the action of the city in passing the illegal ordinance under discussion in this case, and upon that question it is said by Cooley on Torts, p. 408:

"Whenever, therefore, the state confers judicial powers upon an individual, it confers them with full immunity from private suit; in effect, the state says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the state, and the peace and happiness of society; that if he shall fail in the faithful discharge of them he shall be called to account as a criminal; but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied indi-

vidual shall not be suffered to call in question his official action in a suit for damages."

The same might be said with reference to the executive duties of a police officer, and of the liability of the corporation enforcing what it deems to be the law through the medium of such officers. If, for every miscarriage of a prosecution by reason of some unconstitutional provision in the law, criminals who were guilty of violating the law on the merits could get redress in damages against either the officer or the municipality, there would be a timidity in enforcing the law which would tend to paralyze the administration of justice.

In *McFadin v. San Antonio*, 22 Tex. Civ. App. 140, 54 S. W. 48, it was held that since a city, in the enactment of an ordinance against suspicious characters, acts in its governmental capacity and in the exercise of its police powers, it will not be liable for damages to the reputation of one arrested, fined, and imprisoned under such an ordinance, even though the ordinance be void; and that the motives of the mayor and city council in enacting the ordinances could have no effect upon the rule; citing *Easterly v. Irwin,* 99 Iowa 694, 68 N. W. 919; *New Orleans v. Kerr,* 50 La. An. 314, 23 South. 384, 69 Am. St. 442, and many other cases cited in support of the rule announced.

In *Caldwell v. Prunelle,* 57 Kan. 511, 46 Pac. 949, an action for false imprisonment, the court said:

"It is well settled that cities are not liable in an action for false imprisonment for the acts of their officers while enforcing invalid ordinances, or for other illegal or unauthorized acts. The provision in question is a police regulation, and the officers in enforcing the same were exercising a public and governmental function."

A town ordinance enacted under statutory authority therefore, prohibiting transients or peddlers from selling

their wares therein until they shall have procured a license therefor, is a police regulation, and the town is not liable for an arrest and imprisonment for an alleged violation thereof, even though the ordinance be invalid for any reason, though the injured party is, in fact, innocent of the charge, and though the city authorities directed the arrest for the purpose of protecting resident merchants from competition. *Easterly v. Irwin, supra.*

In *Buttrick v. Lowell,* 1 Allen 172, 79 Am. Dec. 721, it was decided that a city was not liable for an assault and battery committed by its police officers, even though it was done in an attempt to enforce an ordinance of the city; and, as bearing upon the question raised in the case at bar that the action was ratified by the city through the prosecution of the case by the city attorney, it was held in the case just cited that the action of a city in authorizing and employing its solicitor to appear and defend an action brought against its police officers for an assault and battery by them, does not make the city liable to pay damages for the assault and battery. An action of tort cannot be maintained against a town for the acts of its assessors and collectors in assessing and levying a poll tax upon a person not an inhabitant thereof, even if the assessors act with integrity and fidelity, and are therefore by the general statutes not themselves liable to an action. *Alger v. Easton,* 119 Mass. 77.

*Trescott v. Waterloo,* 26 Fed. 592, like the case at bar, was for imprisonment under a void ordinance, and it was held that a party who had been arrested for the violation of an unconstitutional municipal ordinance requiring a license fee to be paid by nonresident peddlars, and, on conviction, has served out his fine in prison, cannot maintain an action against the municipal corporation.

In *Town of Laurel v. Blue* (Ind.), 27 N. E. 301, it was held that a town is not responsible for an unlawful arrest by the town marshal, since in making arrests he is acting for the public, and is not the agent of the town; citing *Lafayette v. Timberlake,* 88 Ind. 330, where, in discussing a similar question, Elliott, J., said:

"Officers appointed to execute the laws and ordinances are not agents engaged in corporate duties, but are public officers, appointed at the command of the legislature by the corporation authorities. There is no more reason for holding cities responsible for the wrongs of police officers than there is for holding counties or townships responsible for the torts of sheriffs and constables."

See, also, *Faulkner v. Aurora,* 85 Ind. 130, 44 Am. Rep. 1; *City of Anderson v. East,* 117 Ind. 126, 19 N. E. 726, 2 L. R. A. 712, 10 Am. St. 35.

Under the great weight of authority, we think the court did not err in sustaining the demurrer to the complaint. The judgment is therefore affirmed.

FULLERTON, C. J., and HADLEY, ANDERS, and MOUNT, JJ., concur.