## Clark v. City of Louisville et al.

(Decided May 20, 1938.)

JOSEPH M. HAYSE and HERMAN GOLDBERG for appellant.

MARK BEAUCHAMP and GAVIN H. COCHRAN for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellant, Huston Clark, an infant under twenty-one years of age, suing by his father and next friend, Fred Clark, brought this suit in the Jefferson circuit court against the city of Louisville and its Board of Park Commissioners for the recovery of damages for

personal injury received by the plaintiff while using a swing erected in and a part of the equipment of Portland Park, which is owned, equipped, and maintained by the city through and by its Park Commissioners, as a public park.

Plaintiff alleged that on or about the 18th day of May, 1936, while he was playing in Portland Park which is a public park belonging to the Board of Park Commissioners, and while he was sitting in one of the swings in said park and was swinging in said swing in a proper manner, and having due regard for his own safety, one of the upright chains of the swing broke and gave way and threw plaintiff to the ground, causing his left leg to be broken, etc. He then describes his injury and asked for recovery of damages against the city in the sum of $3,000.

The court sustained a demurrer to the petition under the rule that the operation of a public park by a city is a public or governmental function and there is no liability either against the Board of Park Commissioners or the city for an injury sustained by any one on account of the negligence of any park officer or employee. Plaintiff failing to plead further, his petition was dismissed, and this appeal follows.

In the outset, counsel for appellant concedes that the rule stated above is and has been for many years the law of this jurisdiction as well as many other jurisdictions, but insists that the rule is unsound and springs from the ancient theory that the king could do no wrong, and that the king was the state, and the rule had its inception in an age when the king or sovereign was a law unto himself and had almost absolute dominion over his subjects and all property; that this ancient theory, which is more or less legal fiction, has threaded its way down through the ages and by mere stare decisis on the subject and the court of this jurisdiction as well as many others, has held that one cannot sue the city when it is acting in a governmental capacity because of its sovereignty when it is acting either remotely or directly as an arm of the sovereign state. However, this rule does not apply to streets, sidewalks, and public ways of a city, although they are maintained for the benefit of the public. This exception is based upon the reasoning and theory that public ways are absolutely essential to the functioning of government and operated by the city for the benefit of its citizens. The

argument is that the distinction between the general rule and the exception (public ways) is illogical and that there is no reason why a city should not be held responsible for the negligence of its officers and agents in the maintenance of public parks, as well as public ways, and that the rule absolving the city from liability for the negligence of its officers and agents in the maintenance of parks and other governmental functions should be abrogated and the city should be held responsible for the proper maintenance and conduct of all its governmental functions.

Briefly stated, we are called upon to abrogate the long and well established rule that the sovereign state as well as its subdivisions is not responsible for the negligence of its officers and agents when acting as an arm of government.

In support of plaintiff's argument there are cited articles in recent issues of various law journals including Yale, Harvard, Virginia Law Review, Michigan Law Review, and perhaps others tending to criticize or question the soundness of the nonliability rule as to parks and perhaps other governmental functions, as now established in this state and in a majority of the states of the Union. There is also cited the case of Paraska et al. v. City of Scranton, 313 Pa. 227, 169 A. 434, where a child was injured by falling from a swing in a playground maintained by the city of Scranton, and the Pennsylvania court held the city liable for its failure to keep the ground around the swing in a safe condition for children invited to use the playground. And to the same effect is the case of William Capp et al. v. City of St. Louis, 251 Mo. 345, 158 S. W. 616, 46 L. R. A., N. S., 731, Ann. Cas. 1915C, 245.

In 99 A. L. R. 689, in discussing the question under consideration, and referring to the minority rule as stated in the Pennsylvania and Missouri cases, supra, it is said:

"These decisions being grounded, for the most part, but not entirely, upon the theory that a municipality maintains such parks in its private or proprietary capacity, in distinction from functioning in its governmental capacity."

However, in this jurisdiction public parks maintained by cities have been classed and declared to be a

governmental function, in distinction from a private or proprietary capacity.

For more than fifty years this court has consistently held that public policy requires the exemption of municipalities from liability on account of negligence committed in the exercise of a governmental function. The first Kentucky case, so far as we have been able to ascertain, pronouncing the doctrine of municipal nonliability in cases involving the exercise of a governmental function, is Greenwood v. City of Louisville, 13 Bush 226, 76 Ky. 226, 26 Am. Rep. 263. However, prior to that time textwriters and courts of the majority of the states of the Union had already pronounced that doctrine, and this court has consistently adhered to it from that date down to the recent case of Van Pelt v. City of Louisville, 257 Ky. 256, 77 S. W. (2d) 942.

Appellants insist that even though the nonliability rule be applied to governmental functions, strictly speaking, it should not be applied to parks because of their peculiar nature and purpose, in that, they are not absolutely essential to the function of government but rather places of amusement and entertainment. However, the nonliability rule was applied to public parks owned and maintained by the city in the case of Board of Park Commissioner v. Prinz, 127 Ky. 460, 105 S. W. 948.

Briefly stated, that case holds that municipal public parks, maintained without gain, are for public purposes, and the right of a city to support by taxation public parks rests on its duty to maintain the public health; and, in the absence of a statute authorizing it, an action will not lie against a municipality for the negligence of a public duty imposed on it for the benefit of the public or for the personal tort of any of its officers or agents in the performance of such public duty; nor will an action lie against a board elected by the voters of the city, with authority to control the public parks supported by taxation, for the negligence of its employees.

It is thus seen that the case, supra, places public parks within the same category as other public and governmental departments and functions of the city. The reason for the rule is that parks are maintained not merely for amusement but for the public health of the citizens of the city.

It is the established rule of this and all other jurisdictions, so far as we know, that it is within the police power of the states and municipalities to enact laws and prescribe rules and regulations for the protection of the public health, and, public parks being for the benefit of the public health, we see no reason for placing them within a different rule to that of any other public health agency, such as sanitary sewer systems, the right to quarantine in case of epidemics of contagious diseases, and various other conditions arising which may tend to endanger the public health.

It is our view that the nonliability rule as applied to public parks of a city finds support in sound reasoning as well as authority, and we see no reason why we should now abrogate that rule. If the people are convinced that the rule is not a sound one and the contrary rule should be established, they have their remedy through their legislative body to which they may address themselves.

Judgment affirmed.